**Mary Lou DiCRISCI, Plaintiff,**

v.

**LYNDON GUARANTY BANK OF NEW YORK, A DIVISION OF ITT CONSUMER FINANCIAL CORP.; ITT Consumer Financial Corp.; and Gregory L. Ferguson, Individually and as President of Lyndon Guaranty Bank of New York, Defendants.**

**No. 92–CV–6102.**

United States District Court, W.D. New York.

Nov. 23, 1992.

---

Janice A. Lahman, Schuler & VonDohlen, Rochester, NY, for plaintiff.

Debra A. Martin, Martin & Labowitz, Rochester, NY, for defendants.

## DECISION AND ORDER

LARIMER, District Judge.

### BACKGROUND

Plaintiff was formerly employed by ITT Consumer Financial Corporation ("ITT") as the Operations Manager at its subsidiary, Lyndon Guaranty Bank of New York. On July 7, 1989, plaintiff and ITT entered into a written employment contract, Paragraph 5 of which provides:

> ITT CFC and EMPLOYEE agree that any dispute between them or claim by either of them against the other or any agent or affiliate of the other shall be resolved by binding arbitration under the Code of Procedure of the National Arbitration Forum, 2124 Dupont Avenue South, Minneapolis, MN, and that judgment upon the award may be entered in any court of competent jurisdiction.

Goodman Aff.Ex.A.

Plaintiff, who resigned from her employment on October 30, 1991, timely filed a complaint with the New York State Division of Human Rights, alleging that her immediate supervisor subjected her to gender discrimination, sexual harassment and a hostile work environment. After she was issued a right-to-sue letter by the Equal Employment Opportunity Commission ("EEOC"), plaintiff commenced this action in March 1992, alleging causes of action under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, and the New York State Human Rights Law, N.Y.Exec.L. § 296.

Defendants have moved to stay these proceedings and to compel arbitration under the Federal Arbitration Act ("FAA" or "the Act"), 9 U.S.C. § 1 *et seq.* Plaintiff has cross-moved for attorney's fees and

costs pursuant to Rule 11 of the Federal Rules of Civil Procedure.

With one narrow exception, which will be explained below in the discussion of punitive damages, I will grant defendants' motion to compel arbitration. Since plaintiff's cross-motion is based largely on her contention that defendants' motion is meritless, I will deny her motion for attorney's fees and costs.

## DISCUSSION

### 1. Applicable Standard Under the FAA

A court deciding a motion to compel arbitration and to stay proceedings should consider four factors: whether there has been an agreement to arbitrate; the scope of that agreement; whether the federal statutory claims, if any, were intended by Congress to be non-arbitrable; and, if only some of the claims are subject to arbitration, whether to stay the remainder of the proceedings pending arbitration. *Creative Securities Corp. v. Bear Stearns & Co.,* 671 F.Supp. 961, 965 (S.D.N.Y.1987), *aff'd,* 847 F.2d 834 (2d Cir.1988).

The arbitrability of the parties' dispute is for the court, not the arbitrator, to decide at the outset. *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). In determining arbitrability, the court must take into account the strong federal policy favoring enforcement of agreements to arbitrate. *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). This policy is intended to prevent "[c]ontracts to arbitrate [from being] avoided by allowing one party to ignore the contract and resort to the courts." *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).

So strong is the policy favoring arbitration that enforcement of the agreement "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T,* 475 U.S. at 650, 106 S.Ct.

at 1419 (quoting *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). Accordingly, any doubts as to arbitrability should be resolved in favor of arbitration. *Id.; Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985).

The court is not to consider the merits of the underlying controversy in deciding whether it should be submitted to arbitration. *AT & T,* 475 U.S. at 649, 106 S.Ct. at 1418. The only issues at this stage are whether the parties' agreement to arbitrate encompasses the dispute, and if so, whether the law permits arbitration of the dispute. *Mitsubishi,* 473 U.S. at 628, 105 S.Ct. at 3354. If both these questions are answered in the affirmative, the court has no discretion, and must direct the parties to proceed to arbitration. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217–18, 105 S.Ct. 1238, 1240–41, 84 L.Ed.2d 158 (1985).

### 2. Agreement to Arbitrate

Plaintiff contends that she never agreed to arbitrate her claims in this case. She argues that the agreement covered only certain specified aspects of her employment relationship, and did not include Title VII claims.

The text of the employment agreement does not support plaintiff's position. Neither the arbitration clause nor the agreement as a whole contains any indication that its scope was limited. On the contrary, the clause stated that the parties "agree that *any* dispute between them or claim by either of them against the other or any agent or affiliate of the other shall be resolved by binding arbitration ..." Goodman Aff.Ex.A (emphasis added). In my view, that broadly-worded provision clearly includes the present dispute.

Plaintiff also alleges that the arbitration clause has no effect on the present dispute because it is part of her employment agreement, which has now been terminated. It is clear, however, that the

termination of a contract does not necessarily extinguish a party's duties under an arbitration clause contained in the contract. *See Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union,* 430 U.S. 243, 251–55, 97 S.Ct. 1067, 1071–74, 51 L.Ed.2d 300 (1977) (claim for severance pay under expired collective bargaining agreement was arbitrable); *see also Litton Financial Printing v. N.L.R.B.,* — U.S. ——, —— n. 3, 111 S.Ct. 2215, 2226 n. 3, 115 L.Ed.2d 177 (1991) (termination of employment contract does not necessarily terminate arbitration provision) (citing *Mendez v. Trustees of Boston Univ.,* 362 Mass. 353, 356, 285 N.E.2d 446 (1972)). The Second Circuit has expressly held that "grievances based on conditions arising *'during the term of the agreement to arbitrate'* are arbitrable after the term has ended." *Coudert v. Paine Webber Jackson & Curtis,* 705 F.2d 78, 81 (2d Cir.1983) (citing *Procter & Gamble Independent Union of Port Ivory v. Procter & Gamble Mfg. Co.,* 312 F.2d 181, 186 (2d Cir.1962), *cert. denied,* 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963)).

In the case at bar, the events giving rise to the dispute occurred prior to the termination of the employment relationship, and the dispute clearly concerns that relationship. Moreover, the language of the arbitration clause is not limited to disputes arising out of the contract itself, nor does it contain any temporal limitations. These facts, together with the federal policy in favor of arbitration, compel the conclusion that the dispute here is subject to the arbitration agreement.

### 3. Arbitrability of Title VII Claims

■ Plaintiff contends that claims arising under Title VII are not arbitrable as a matter of law, that an employee cannot consent to arbitration of such claims, and that she never waived her right to bring those claims in a judicial forum. Plaintiff relies heavily on *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), in which the Court held that an employee was not foreclosed from pursuing a Title VII action after he had lost in compulsory arbitration. The Court stated that "[t]here is no suggestion in the statutory scheme [of Title VII] that a prior arbitral decision either forecloses an individual's right to sue or divests federal courts of jurisdiction." *Id.* at 47, 94 S.Ct. at 1019.

In *Gilmer v. Interstate/Johnson Lane Corp.,* — U.S. ——, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), however, the Court held that *Alexander* does not prohibit the arbitration of employment discrimination claims, *id.* at ——, 111 S.Ct. at 1656, and held that a terminated employee's claim against his former employer under the Age Discrimination in Employment Act, 29 U.S.C. § 691 *et seq.,* could be subjected to compulsory arbitration pursuant to an arbitration agreement in a securities registration application. *Id.* at ——, 111 S.Ct. at 1650. In distinguishing *Alexander* and its ensuing line of cases, the Court rejected many of the arguments plaintiff has made in the instant case. The Court noted that *Alexander* and its progeny did not involve the enforceability of an agreement to arbitrate statutory claims, but dealt with whether arbitration of contractual claims precluded subsequent judicial resolution of statutory claims. The Court also pointed out that the *Alexander* line of cases implicated concerns over the effect of collective bargaining on individual rights, and that those cases were not decided under the FAA, which "reflects a 'liberal federal policy favoring arbitration agreements.'" *Id.* at ——, 111 S.Ct. at 1657. The Court also rejected plaintiff's "waiver" argument, stating that "Congress ... did not explicitly preclude arbitration or other non-judicial resolution" of ADEA claims. *Id.* at ——, 111 S.Ct. at 1654.

The Court of Appeals for the Fifth Circuit has applied *Gilmer*'s reasoning to hold that "Title VII claims can be subjected to compulsory arbitration," stating that "[a]ny broad public policy arguments against such a conclusion were necessarily rejected by *Gilmer*." *Alford v. Dean Witter Reynolds, Inc.,* 939 F.2d 229, 230 (5th Cir.1991) (*"Alford II"*). Significantly, the Fifth Circuit came to this conclusion after previously holding that Title VII claims were not arbitrable. *Alford v. Dean Witter Reynolds, Inc.,* 905 F.2d 104 (5th Cir.

1990) (*"Alford I"*). The Supreme Court vacated that decision on appeal and remanded "for further consideration in light of *Gilmer.*" —— U.S. ——, 111 S.Ct. 2050, 114 L.Ed.2d 456 (1991).

On remand, in *Alford II*, the Fifth Circuit held that Title VII claims are arbitrable. The court in *Alford II* noted that "both the ADEA and Title VII are similar civil rights statutes, and both are enforced by the EEOC ..." *Alford II*, 939 F.2d at 230. The court therefore held that the logic of *Gilmer* compelled the conclusion that "Title VII claims, like ADEA claims, are subject to arbitration under the FAA." *Id.*

I reach the same conclusion in the case at bar, and hold that under the analysis of *Gilmer*, Title VII claims may properly be ordered to arbitration when they are covered by a valid arbitration agreement. In light of the broad nature of the agreement between the parties, I also find that plaintiff did indeed consent to arbitration of the underlying dispute here.

### 4. FAA Employment Contract Exclusion

In 9 U.S.C. § 1, the Act states that "[N]othing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." Although plaintiff's initial papers in response to defendant's motion did not discuss the possible applicability of this section to the arbitration agreement in this case, it was discussed at oral argument, and, in response to the court's request, the parties have briefed the issue.

Having reviewed the supplemental briefs, the statute, and the case law on the subject, I conclude that the contract in this case does not fall within the exclusion for certain types of employment contracts. In short, the parties' contract does not involve "workers engaged in foreign or interstate commerce."

I note initially that there is no clear Supreme Court authority on this point. In *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), the Court discussed the meaning of "commerce" in § 2 of the Act, which makes

enforceable any arbitration "provision in any maritime transaction or a contract evidencing a transaction involving commerce ..." The Court held that the limitation of the FAA to contracts "involving commerce" was meant to make the Act applicable in state as well as federal courts. Had Congress intended the Act to apply only in federal courts, the Court reasoned, the "involving commerce" limitation would be "an inexplicable limitation on the power of the federal courts ..." *Id.* at 14–15, 104 S.Ct. at 860.

Given the different issues presented in *Southland Corp.*, then, I do not read the Court's holding as affecting the continued validity in this Circuit of earlier Second Circuit cases holding that the § 1 exclusion is limited to workers *literally* involved in commerce. In *Signal–Stat Corp. v. Local 475*, 235 F.2d 298 (2d Cir.1956), *cert. denied*, 354 U.S. 911, 77 S.Ct. 1293, 1 L.Ed.2d 1428 (1957), the court held that "the exclusionary clause in Section 1 applies only to ... those actually in the transportation industries." *Id.* at 302. The court said that the employees in *Signal–Stat*, who worked for a manufacturer of automotive electrical equipment, "[we]re not actually engaged in interstate and foreign commerce," but "[we]re merely engaged in the manufacture of goods for interstate commerce," and that therefore their collective bargaining agreement did not fall w/in the exclusion. *Id.* at 303.

The Court of Appeals reaffirmed this view in *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064 (2d Cir.1972), stating that § 1 is limited "to employees involved in, or closely related to the actual movement of goods in interstate commerce." *Id.* at 1069. The court held that a professional basketball player "clearly [wa]s not involved in the transportation industry" and therefore affirmed an order staying the player's action to rescind his contract pending arbitration. The court said that "[i]n light of the strong national policy in favor of arbitration as a means of settling private disputes we see no reason to give an expansive interpretation to the exclusionary language of Section 1 by reex-

amining our decision in *Signal–Stat ...*" *Id.* [1]

An analysis of the Act also supports the conclusion that § 1 refers to actual interstate commerce. Although at first glance it might seem likely that Congress would have intended "commerce" to have the same meaning throughout the Act, the reference to "workers engaged in foreign or interstate commerce" in § 1 would be surplusage if it were simply coextensive with Congress's powers under the commerce clause. Under *Southland Corp.*, § 2 gives the Act as a whole the same reach as Congress's commerce clause power. Therefore, if Congress had wanted to excluded *all* employment contracts from the Act, it could simply have said "employment contracts" and left it at that. Any workers beyond the reach of the commerce clause would not be covered by the Act in the first place. The language of § 1 also reinforces this view; the reference to "seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce," suggests that Congress intended to refer to workers engaged in commerce *in the same way* that seamen and railroad workers are.

Finally, although the Second Circuit has called the legislative history of § 1 "at best, vague and inconclusive," *Signal–Stat*, 235 F.2d at 302, the court said that the exclusion "apparently was inserted at the request of the Seamen's Union, which felt that disputes involving the contracts of seamen came within the admiralty jurisdiction and should not be subject to arbitration." *Id.; but see Willis*, 948 F.2d at 311 (quoting statement of chairman of ABA committee responsible for drafting the bill that the bill "is not intended [to] be an act referring labor disputes, at all"). This suggests that the exclusion may have arisen from some relatively narrow concerns over certain classes of workers, rather than broad concerns over employment contracts generally.

## 5. Punitive Damages

▮▮▮▮ Plaintiff next argues that the dispute should not be submitted to arbitration because her complaint requests punitive damages. Plaintiff correctly states that an arbitrator has no power to award punitive damages on claims brought under New York law. *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976). Under federal law, and on federal claims, there is no such prohibition against an arbitrator's award of punitive damages. *See Kerr–McGee Refining Corp. v. M/T Triumph*, 924 F.2d 467, 470 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991).

This prohibition concerning one claim does not bar arbitration, however, since the court may simply sever the arbitrable claims and order them submitted to arbitration. *See, e.g., Chisolm v. Kidder, Peabody Asset Mgmt., Inc.*, 92 Civ. 0774, 1992 WL 135587, at *6–7, 1992 U.S. Dist. LEXIS 7648, at *19–20 (S.D.N.Y. June 2, 1992). This is in keeping with the Supreme Court's holding in *Byrd, supra*, that the FAA "requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." 470 U.S. at 217, 105 S.Ct. at 1241.

Therefore, I will sever and stay further proceedings on the claim for punitive damages under N.Y.Exec.L. § 296, pending the completion of arbitration. Accordingly, the remaining aspects of this claim, including liability and non-punitive damages, are to be sent to arbitration along with plaintiff's other federal causes of action. If necessary, this court can deal with the punitive

---

1. Plaintiff relies on *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305 (6th Cir.1991), in which the court held that under *Gilmer*, the meaning of "commerce" in § 1 is coextensive with that in the Commerce Clause. Aside from the fact that *Willis* is not binding in this circuit, the Sixth Circuit's statements in this regard are *dicta* because (as in *Gilmer*) the court's decision rested not on its interpretation of "commerce" but on its finding that "arbitration agreements contained in a securities registration application ... do not constitute contracts for employment." *Id.* at 312.

damages issue after the conclusion of arbitration.

■ I also note that defendants contend that punitive damages are not available on plaintiff's federal Title VII claim because, although the complaint was filed after the effective date of the Civil Rights Act of 1991, which provides for the recovery of punitive damages in certain cases, the complaint alleges conduct which occurred prior to the effective date of that Act. Whether the 1991 amendments to Title VII apply in such a situation has not yet been definitively resolved in the Second Circuit; *see, e.g., Bridges v. Eastman Kodak Co.*, 800 F.Supp. 1172, 1173 (S.D.N.Y.1992) (noting split of authority within Southern District).

In my view, this issue need not be resolved at this stage. The only question before the court at this point is whether the *dispute* is subject to arbitration. Having found that it is, this court has no discretion to do anything but "rigorously enforce" the arbitration agreement and submit the dispute to arbitration. *Byrd*, 470 U.S. at 221, 105 S.Ct. at 1242. Since federal law has no *per se* rule preventing arbitrators from awarding punitive damages, *see Kerr–McGee Refining Corp. v. M/T Triumph*, 924 F.2d 467, 470 (2d Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991), whether punitive damages should be awarded on plaintiff's Title VII claim will be for the arbitrator to decide in the first instance.

### 6. Estoppel

■ Plaintiff argues that defendants are estopped from demanding arbitration in this case because they never raised the issue of arbitration with the State Division of Human Rights or the EEOC. I disagree. "Mere participation in an action does not constitute a waiver of arbitration when an assertion of the right to arbitrate is made in a timely manner." *Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 263 (2d Cir.1990). Therefore, "delay in seeking arbitration, absent prejudice to the opposing party, does not constitute waiver." *Com–Tech Associates v. Computer Associates International, Inc.*, 938 F.2d 1574, 1576 (2d Cir.1991).

In the case at bar, I do not find a waiver to have occurred. The complaint here was filed on March 9, 1992, and defendants filed their motion to compel arbitration on May 15, which was within their stipulated time to answer or move against the complaint. Thus, this is not a case in which "a party participate[d] in an action until a determination on the merits without raising the right to arbitration ..." *Bowers*, 901 F.2d at 263. Rather, defendants promptly raised the issue early in the litigation. *See Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457 (2d Cir.) (defendants did not waive right to compel arbitration by participating in discovery for two years and by filing motion to dismiss under Rule 12(b)(6), since they had previously asserted arbitration as a defense in their answer), *cert. denied,* 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985).

Furthermore, even taking into account plaintiff's filing of administrative charges in July 1991, plaintiff has failed to show that the delay was inordinately long or prejudicial so as to give rise to a waiver. *Cf. Com–Tech*, 938 F.2d at 1577 (defendants waived right by not raising arbitration issue until after "protracted litigation" involving extensive discovery expenses).

## CONCLUSION

Defendants' motion to compel arbitration is granted. Except for plaintiff's claims for punitive damages under N.Y.Exec.L. § 296, the parties are directed to submit their dispute to arbitration in accordance with the terms of plaintiff's employment agreement. All further proceedings in this litigation are stayed pending completion of arbitration.

Plaintiff's motion for attorney's fees and costs under Fed.R.Civ.P. 11 is denied.

IT IS SO ORDERED.