Mona (Mahvash) K. **ALBERT,** Plaintiff,

v.

The **NATIONAL CASH REGISTER CO.,** Brian Murphy, Russell Shaub, and Carter Hall, **Defendants.**

No. 93–1176–CIV–UNGARO.

United States District Court, S.D. Florida.

Jan. 3, 1994.

Dana G. Bradford, II, Baumer, Bradford & Walters, P.A., Jacksonville, FL, for defendant NCR Corp.

Harley S. Tropin, Kozyak, Tropin, Throckmorton & Humphreys, P.A., Miami, FL, for defendants Murphy, Shaub and Hall.

Muchnick, Wasserman & Dolin by Susan L. Dolin, Hollywood, FL, for plaintiff.

### ORDER ON DEFENDANT'S MOTION TO DISMISS OR TO STAY AND TO COMPEL ARBITRATION

UNGARO–BENAGES, District Judge.

THIS CAUSE is before the Court upon Defendant NCR's Motion to Compel Arbitra-

tion and to Dismiss Action or to Stay Proceedings [D.E. 15].

THE COURT has considered the Motion, the response and the pertinent portions of the record, and being otherwise fully advised in the premises is persuaded said Motion should be granted in part and denied in part.

### Background

Plaintiff is an Iranian woman who adheres to the Moslem religion. Complaint, ¶ 6 [D.E. 1]. Plaintiff was employed by Defendant NCR from June 11, 1990 until June 25, 1992 as a sales representative in NCR's retail division at Miami, Florida. Complaint, ¶ 11 [D.E. 1]. Plaintiff alleges that during her tenure with NCR, Defendants Shaub, Hall, and Murphy, her supervisors, engaged in acts of harassment and discrimination due to her gender, her national origin, and her religion. Complaint pp 1–15 [D.E. 1]. Plaintiff resigned her position at NCR on June 25, 1992, and subsequently brought this suit alleging actions in violation of her civil rights as secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and the Reconstruction Era Civil Rights Act, 42 U.S.C. § 1981, as well as pendant state law claims sounding in tort and arising under the Florida Human Rights Act, Florida Statutes § 760.10. Joint Scheduling and Status Report, pp. 1–2 [D.E. 46].

Defendant has moved that this Court compel arbitration of Plaintiff's claims against NCR pursuant to the terms of Plaintiff's Employment Contract with NCR and under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), and either to dismiss this action or to stay proceedings pending such arbitration. Plaintiff opposes this Motion, arguing that the arbitration provision of the employment contract is unenforceable and that the contract itself is not subject to the provisions of the FAA. Plaintiff's Response [D.E. 33]. For the reasons that follow, Defendant's Motion is granted in part and denied in part.

### Analysis

*Enforceability of the Arbitration Provision*

Plaintiff asserts that her employment contract is unenforceable for lack of mutuali-

ty. Plaintiff apparently reaches this conclusion because she was an at-will employee, capable of being terminated at any time for virtually any reason without recourse to arbitration under the employment contract. Plaintiff's Response [D.E. 33].

■ The Court finds this position to be without merit. By the plain terms of the employment contract entered into by the parties, Defendant agreed to hire Plaintiff subject to certain terms and conditions, including the stipulation that any and all disputes arising out of the employment would be subject to arbitration. Affidavit of Terrence M. Kramer, Exhibit A [D.E. 19]. That Plaintiff remained an at-will employee did not in any way affect the enforceability of the other terms of the contract. For example, had Defendant brought suit against Plaintiff for violations of the Confidential Information provisions of Paragraph 5(c) of Plaintiff's employment contract, Plaintiff retained the right to force Defendant to submit the dispute to arbitration pursuant to the contract's arbitration agreement. Where both parties are bound by contractual provisions, mutuality exists and those terms are held enforceable. See, Bossert v. Palm Beach County Comprehensive Community Mental Health Center, Inc., 404 So.2d 1138, 1139 (Fla. 4 DCA 1981) (fact that an employment contract may be terminable at the option of one of the parties does not render it unenforceable for want of mutuality); Rollins Services v. Metropolitan Dade County, 281 So.2d 520, 521 (Fla. 3 DCA 1973).

*Applicability of the Federal Arbitration Act*

■ Plaintiff also maintains that her employment contract is a "contract of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" and therefore exempt from the application of the Federal Arbitration Act. 9 U.S.C. § 1. Although Plaintiff admits that her employment did not entail the actual movement of goods through interstate commerce, Plaintiff's Response, pp 8–9 [D.E. 33], Plaintiff maintains that the exclusion clause of Section 1 of the FAA should be read broadly, to include all contracts of employment affecting interstate commerce. Plaintiff's Response, pp 8–11 [D.E. 33]. The interpretation to be given this clause has sharply divided the federal circuits.

The Federal Arbitration Act was originally passed in 1925 pursuant to Congress' authority under the Commerce Clause. *Southland Corporation v. Keating,* 465 U.S. 1, 11, 104 S.Ct. 852, 859, 79 L.Ed.2d 1 (1984). While the law is fairly settled that Title VII claims and other civil rights actions are subject to the enforcement mandate of 9 U.S.C. § 2, *See Gilmer v. Interstate/Johnson Lane Corporation,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698 (11th Cir.1992), what is less clear is whether employment contracts such as Plaintiff's fall into the clause in Section 1 of the Act that excludes certain contracts from the Act's operation.

Several circuits have held that the reference to seamen and railroad employees means that only the employment contracts of those "workers engaged in foreign or interstate commerce" involved in the actual interstate movement of goods are outside the scope of the FAA. *See, DiCrisci v. Lyndon Guaranty Bank of New York,* 807 F.Supp. 947 (W.D.N.Y.1992). Other Circuits have held that the exclusion applies to employment contracts of any and all workers affecting interstate commerce. *See, Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305 (6th Cir.1991).

The Supreme Court has not decided this issue. The nearest the Court has come to resolving these conflicting interpretations of Section 1 of the FAA was its decision in *Gilmer v. Interstate/Johnson Lane Corp,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). However, in *Gilmer* the Court concluded that interpreting the exclusion clause was unnecessary because the specific contract involved did not constitute an employment contract. *Gilmer,* 500 U.S. at 23–27, n. 2, 111 S.Ct. at 1651–52, n. 2. Justice Stevens, joined by Justice Marshall, filed a dissenting opinion in which he opined that the reading of "commerce" in Section 1 should be read broadly to include all employment contracts affecting interstate commerce. *Id.* at 38–43, 111 S.Ct. at 1659–61 (dissenting opin-

ion). The Sixth Circuit relied heavily on this dissent in its discussion in *Willis*.

In *Willis*, the Sixth Circuit assumed that Congress had meant for the term "commerce" to possess the same definition and to have the same effect in both Sections 1 and 2 of the Act, and that as Section 2 of the Act has been read broadly so as to give the Act as great an effect as possible, the exclusion clause of Section 1 should be read just as broadly so as to encompass all employment contracts Congress could reach pursuant to its authority under the Commerce Clause. *Willis*, 948 F.2d at 310–12. Consequently, if an employer is subject to Title VII claims (also promulgated pursuant to Congress' authority under the Commerce Clause) then any employment contracts entered into by that employer with its employees are within the exclusion of Section 1. *Id.; See also United Electrical, Radio & Machine Workers v. Miller Metal Products*, 215 F.2d 221 (4th Cir.1954).

■ Conversely, in *DiCrisci* the District Court for the Southern District of New York reasoned that if Congress wanted the exclusion of Section 1 to apply to the full extent of its authority under the Commerce Clause then the inclusion of specific examples of employment such as seamen and railroad employees, and the words "workers engaged in foreign or interstate commerce" would have to be considered mere surplusage, as Congress could have achieved the same result merely by referring to "employment contracts". *DiCrisci*, 807 F.Supp. at 952–53. Therefore, the Court reasoned, the term "commerce" in Section 1 must be read more narrowly than it is read for purposes of Section 2, and should include only the employment contracts of those workers actually engaged in the interstate transportation of goods. *Id.; See also Signal–Stat Corporation v. Local 475*, 235 F.2d 298 (2d Cir.1956), *cert. denied*, 354 U.S. 911, 77 S.Ct. 1293, 1 L.Ed.2d 1428 (1957); *Pietro Scalzitti Co. v. International Union of Operating Engineers, Local No. 150*, 351 F.2d 576 (7th Cir. 1965); *Tenney Engineering, Inc. v. United Electrical Radio & Machine Workers of America, (U.E.) Local 437*, 207 F.2d 450 (3rd Cir.1953).

The Eleventh Circuit has not been required to resolve this issue. In *American Postal Workers Union, AFL–CIO v. United States Postal Service*, 823 F.2d 466 (11th Cir.1987), the Court noted the dissension in the other circuits, but stated that regardless of which interpretation of the exclusion clause was correct the Court need not decide the issue because "if any workers are 'actually engaged in interstate commerce', the instant postal workers are." *Postal Workers*, 823 F.2d at 473.

Upon consideration of the various opinions advanced by courts to support their interpretation of the Federal Arbitration Act's exclusion clause, and given the unresolved nature of this question in the Eleventh Circuit, the Court is persuaded that the narrower interpretation applied by the Second, Third and Seventh Circuits should be adopted. It is quite impossible to apply a broad meaning to the term "commerce" in Section 1 and not rob the rest of the exclusion clause of all significance. Moreover, at least one other District Court has interpreted the Eleventh Circuit's opinion in *Postal Workers* as an indication that the exclusion clause should be accorded the narrower interpretation. *See, Hydrick v. Management Recruiters International, Inc.*, 738 F.Supp. 1434, 1435 (N.D.Ga. 1990) (this position is consistent with holding that postal workers are " 'workers actually engaged in interstate commerce.' ").

Accordingly, because Plaintiff is not a worker actually engaged in moving goods in interstate commerce, Plaintiff's contract does not fall within the exclusion clause of the Federal Arbitration Act, and its arbitration agreement will be enforced pursuant to 9 U.S.C. § 2.

For the foregoing reasons it is

ORDERED AND ADJUDGED that Defendant NCR's Motion is GRANTED in part and DENIED in part as follows:

1.) The parties are hereby Ordered to submit this dispute to arbitration pursuant to the provisions contained in Plaintiff's employment contract;

2.) All proceedings in this action shall be stayed pending arbitration of the parties' dispute;

3.) Defendant's Motion is denied to the extent it seeks dismissal of this action. *See Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 700 (11th Cir.1992) ("[I]f the arbitration proceedings are somehow legally deficient she may return to federal court for review") (citation omitted).

DONE AND ORDERED.