Mona (Mahvash) K. ALBERT, Plaintiff,

v.

The NATIONAL CASH REGISTER CO., Brian Murphy, Russell Shaub, and Carter Hall, Defendants.

No. 93–1176–CIV–UNGARO–BENAGES.

United States District Court,
S.D. Florida.

Jan. 3, 1994.

Muchnick, Wasserman & Dolin, Hollywood, FL, by Susan L. Dolin, for plaintiff.

Dana G. Bradford, II, Baumer, Bradford & Walters, P.A., Jacksonville, FL, for defendant NCR Corp.; Harley S. Tropin, Kozyak, Tropin, Throckmorton & Humphreys, P.A., Miami, FL, for defendants Murphy, Shaub and Hall.

### ORDER ON INDIVIDUAL DEFENDANTS' MOTION TO DISMISS AND/OR TO COMPEL ARBITRATION

UNGARO–BENAGES, District Judge.

THIS CAUSE is before the Court upon the Individual Defendants' Motion to Dismiss or, in the Alternative, to Compel Arbitration [D.E. 23].

THE COURT has considered the Motion, the response, and the pertinent portions of the record, and being otherwise fully advised in the premises is persuaded that said Motion should be granted in part and denied in part.

### Background

Plaintiff is an Iranian woman who adheres to the Moslem religion. Complaint, ¶ 6 [D.E. 1]. Plaintiff was employed by Defendant NCR from June 11, 1990 until June 25, 1992 as a sales representative in NCR's retail division at Miami, Florida. Complaint, ¶ 11 [D.E. 1]. Plaintiff alleges that during her tenure with NCR, Defendants Shaub, Hall, and Murphy, her supervisors, engaged in acts of harassment and discrimination due to her gender, her national origin, and her religion. Complaint pp 1–15 [D.E. 1]. Plaintiff resigned her position at NCR on June 25, 1992, and subsequently brought this suit alleging conduct in violation of her civil rights as secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and the Reconstruction Era Civil Rights Act, 42 U.S.C. § 1981, as well as pendant state law claims sounding in tort and arising under the Florida Human Rights Act, Florida Statutes § 760.10. Joint Scheduling and Status Report, pp. 1–2 [D.E. 46].

Defendants have moved to dismiss Plaintiff's Title VII and Florida Human Rights Act claims as against them individually, to dismiss Plaintiff's claim for intentional infliction of emotional distress, for this Court to compel arbitration of Plaintiff's remaining claims pursuant to the terms of Plaintiff's Employment Contract with NCR and under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), and either to dismiss these remaining claims or to stay proceedings pending such arbitration. Plaintiff opposes this Motion in its entirety. Plaintiff's Response [D.E. 33]. For the reasons that follow, Defendants' Motion is granted in part and denied in part.

### Analysis

*Motion to Dismiss Title VII and Florida Human Rights Act Claims*

Defendants assert that they can not be held liable for violations of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e, *et seq.*, because the Act does not impose liability on fellow employees. Defendant's Memorandum, pp 2–5 [D.E. 24]. Defendants rely on *Busby v. City of Orlando*, 931 F.2d 764 (11th Cir.1991), where the Court ruled that any suits brought under the provisions of Title VII against an individual "must be made against that individual in his official capacity, not in his individual capacity." *Busby,* 931 F.2d at 772, *citing Harvey v. Blake,* 913 F.2d 226, 227–28 (5th Cir.1990); *see also, Clanton v. Orleans Parish School Board,* 649 F.2d 1084 (5th Cir.1981).[1] The Court went on to state that the proper manner for a Plaintiff to recover under Title VII would be to proceed against the employer either directly or by naming the employer's supervisory employees as its agents. *Id.*

Plaintiff disagrees with this argument, and asserts that the *Busby* decision is in conflict with Title VII's statutory definition of the term "employer". Plaintiff's Memorandum, p. 4 [D.E. 33]. *See,* 42 U.S.C. § 2000e(b) (" 'employer' means a person ... who has fifteen or more employees ... and any agent of such a person....") (emphasis added).

---

1. The Eleventh Circuit in *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Plaintiff argues that under the statutory definition of "employer" these individuals, as supervisory employees, must be found liable for any violations of Title VII. Moreover, Plaintiff argues that the *Busby* decision does not control this action because it contradicts earlier, binding precedent, and when such conflict exists the earlier case law controls. *Ryals v. Estelle,* 661 F.2d 904, 906 (5th Cir. 1981) ("It has long been a rule of this court that no panel of this circuit can overrule a decision previously made by another").

However, an examination of the opinions Plaintiff cites in her Memorandum in Opposition to Defendants' Motion reveals that no conflict exists in this Circuit. In *Williams v. City of Montgomery,* 742 F.2d 586 (11th Cir. 1984), the individual members of the City–County Personnel Board were not sued for Title VII violations in their individual capacity; rather, the Board members were found liable only in their official capacities. *Williams,* 742 F.2d at 589 ("The district court only allows [sic] backpay awards against employers in their official capacities.") (emphasis added). The Circuit Court's decision in *Vance v. Southern Bell Telephone and Telegraph Company,* 863 F.2d 1503 (11th Cir.1989) only asserts that where someone deemed to be the plaintiff's employer, i.e. a supervisory employee, violates Title VII then the corporate defendant can be found liable without recourse to the respondeat superior theory of liability. *Vance,* 863 F.2d at 1512; *see also, Zaklama v. Mount Sinai Medical Center,* 842 F.2d 291 (11th Cir.1988); *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1558 (11th Cir. 1987).[2] None of these cases assert that the supervisory employee, as the employer's agent, can be held liable in an individual capacity for violations of Title VII.

Although it is not binding precedent, the most persuasive decision Plaintiff relies on to support her position is *Hamilton v. Rodgers,* 791 F.2d 439 (5th Cir.1986). In this opinion the Fifth Circuit expressly stated that supervisory employees could be found liable under Title VII for acts of discrimination because "[t]o hold otherwise would encourage supervisory personnel to believe that they may violate Title VII with impunity." *Hamilton,* 791 F.2d at 443. However, the Fifth Circuit subsequently limited the effect of *Hamilton* when it held that, to the extent *Hamilton* found officials liable in their individual capacities, it is in conflict with earlier decisions and is nonauthoritative. *Harvey v. Blake,* 913 F.2d 226, 228 n. 2 (5th Cir.1990), *citing Clanton* and *Ryals, supra.*[3]

This Court is constrained to follow the law as set forth by the Eleventh Circuit in *Busby* and in previous decisions. Accordingly, Plaintiff's claims against these individual defendants in their individual capacities for Title VII violations must fail. Moreover, at the Conference held on November 5, 1993, Plaintiff conceded that her claims against these defendants in their individual capacities for violations of the Florida Human Rights Act, FSA § 760.10, must fail should the Court find that dismissal of her Title VII claims against the individual defendants is proper. Therefore, Plaintiff's claims against these individual defendants for violations of the Florida Human Rights Act will also be dismissed.

---

**2.** In *Miller v. Maxwell's International, Inc.,* 991 F.2d 583 (9th Cir.1993), the Ninth Circuit agreed with this interpretation, and specifically held that the purpose of the "agent" provision in the Act's definition of the term "employer" was "'to incorporate respondeat superior liability into the statute.'" *Miller,* 991 F.2d at 587 (quoting the district court below). Judge Fletcher, dissenting in *Miller,* cited *Sparks* as authority for the assertion that "Employees ... can be sued in their official capacities ..." *Id.* at 588 (dissenting opinion).

**3.** The Court is aware of two non-binding district court opinions in this Circuit that have held an individual liable for Title VII violations. *See Robinson v. Jacksonville Shipyards, Inc.,* 760 F.Supp. 1486 (M.D.Fla.1991), and *Stockett v. Tolin,* 791 F.Supp. 1536 (S.D.Fla.1992). However, the Court notes that the opinion in *Robinson* was rendered without the benefit of the Eleventh Circuit's ruling in *Busby.* Although the opinion in *Stockett* was rendered subsequent to the Eleventh Circuit's ruling in *Busby,* the authority the district court relied on to find the individual defendant liable under Title VII is inapposite. *See Henson v. City of Dundee,* 682 F.2d 897 (11th Cir.1987) (plaintiff brought suit against her employer, but not against the individual supervisor). Therefore, the Court will discount these opinions and adhere to the Eleventh Circuit rule imposing liability on individuals only in their official capacity.

*Plaintiff's Claim for Intentional Infliction of Emotional Distress*

Defendants assert that Plaintiff's claims for intentional infliction of emotional distress should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

On a motion to dismiss the Court must view the complaint in the light most favorable to the plaintiff, *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969), and may only grant the motion where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Moreover, the Court must, "at this stage of the litigation, ... accept [the plaintiff's] allegations as true." *Hishon v. King & Spaulding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

By this standard, Defendants' Motion must be denied. Under Florida law, whether the conduct a plaintiff complains of is so extreme and outrageous as to be actionable as intentional infliction of emotional distress is a question of law for the Court to decide. *Metropolitan Life Insurance Company v. McCarson,* 467 So.2d 277, 279 (Fla.1985); *Baker v. Florida National Bank,* 559 So.2d 284, 287 (Fla. 4 DCA 1990) ("whether ... the activities of the defendant rise [to this level] is a legal question in the first instance for the court"). In *Metropolitan,* the Florida Supreme Court adopted Section 46 of the Restatement (Second) of Torts (1965) as the definition of this tort, and adopted the Comments of Section 46 as the appropriate application of the definition. *Scheller v. American Medical International, Inc.,* 502 So.2d 1268, 1270 (Fla. 4 DCA 1987). Comment d provides:

> [L]iability clearly does not extend to mere insults, indignities,. threats, annoyances, petty oppressions, or other trivialities.... [P]laintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.

Restatement (Second) of Torts § 46 (1965).

As yet, the record is insufficiently developed to determine whether Defendants' alleged conduct amounted to extremely outrageous behavior such that Plaintiff could recover under the tort of intentional infliction of emotional distress. Plaintiff has alleged a pervasive pattern of constant harassment on the part of Defendants. This may, or may not, be so distinguishable from the "petty indignities" and "occasional acts" of oppression that would not be actionable under this theory of relief. Without the benefit of Defendants' Answers and in the absence of any record evidence, determining as a matter of law whether Defendants' alleged conduct is actionable for intentional infliction of emotional distress would be premature.

*Enforceability of the Arbitration Provision*

At the Conference held on November 5, 1993, Plaintiff conceded that, should the Court determine that her claims against Defendant NCR should be submitted to arbitration pursuant to her employment contract with that defendant, her claims against the individual defendants should also be submitted to arbitration. However, Plaintiff asserts that her employment contract is unenforceable for lack of mutuality. Plaintiff apparently reaches this conclusion because she was an at-will employee, capable of being terminated at any time for virtually any reason without recourse to arbitration under the employment contract. Plaintiff's Response [D.E. 33].

The Court finds this position to be without merit. By the plain terms of the employment contract entered into by the parties, Defendant NCR agreed to hire Plaintiff subject to certain terms and conditions, including the stipulation that any and all disputes arising out of the employment would be subject to arbitration. Affidavit of Terrence M. Kramer, Exhibit A [D.E. 19]. That Plaintiff remained an at-will employee did not in any way affect the enforceability of the other terms of the contract. For example, had Defendant NCR brought suit against Plaintiff for violations of the Confi-

dential Information provisions of Paragraph 5(c) of Plaintiff's employment contract, Plaintiff retained the right to force NCR to submit the dispute to arbitration pursuant to the contract's arbitration agreement. Where both parties are bound by contractual provisions, mutuality exists and those terms are held enforceable. *See, Bossert v. Palm Beach County Comprehensive Community Mental Health Center, Inc.,* 404 So.2d 1138, .1139 (Fla. 4 DCA 1981) (fact that an employment contract may be terminable at the option of one of the parties does not render it unenforceable for want of mutuality); *Rollins Services v. Metropolitan Dade County,* 281 So.2d 520, 521 (Fla. 3 DCA 1973).

### *Applicability of the Federal Arbitration Act*

█ Plaintiff also maintains that her employment contract is a "contract of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" and therefore exempt from the application of the Federal Arbitration Act. 9 U.S.C. § 1. Although Plaintiff admits that her employment did not entail the actual movement of goods through interstate commerce, Plaintiff's Response, pp 8–9 [D.E. 33], Plaintiff maintains that the exclusion clause of Section 1 of the FAA should be read broadly, to include all contracts of employment affecting interstate commerce. Plaintiff's Response, pp 8–11 [D.E. 33]. The interpretation to be given this clause has sharply divided the federal circuits.

The Federal Arbitration Act was originally passed in 1925 pursuant to Congress' authority under the Commerce Clause. *Southland Corporation v. Keating,* 465 U.S. 1, 11, 104 S.Ct. 852, 859, 79 L.Ed.2d 1 (1984). While the law is fairly settled that Title VII claims and other civil rights actions are subject to the enforcement mandate of 9 U.S.C. § 2, *See Gilmer v. Interstate/Johnson Lane Corporation,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698 (11th Cir.1992), what is less clear is whether employment contracts such as Plaintiff's fall into the clause in Section 1 of the Act that excludes certain contracts from the Act's operation.

Several circuits have held that the reference to seamen and railroad employees means that only the employment contracts of those "workers engaged in foreign or interstate commerce" involved in the actual interstate movement of goods are outside the scope of the FAA. *See, DiCrisci v. Lyndon Guaranty Bank of New York,* 807 F.Supp. 947 (W.D.N.Y.1992). Other circuits have held that the exclusion applies to employment contracts of any and all workers affecting interstate commerce. *See, Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305 (6th Cir.1991).

The Supreme Court has not decided this issue. The nearest the Court has come to resolving these conflicting interpretations of Section 1 of the FAA was its decision in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). However, in *Gilmer* the Court concluded that interpreting the exclusion clause was unnecessary because the specific contract involved did not constitute an employment contract. *Gilmer,* 500 U.S. at 23–27, n. 2, 111 S.Ct. at 1651–52, n. 2. Justice Stevens, joined by Justice Marshall, filed a dissenting opinion in which he opined that the reading of "commerce" in Section 1 should be read broadly to include all employment contracts affecting interstate commerce. *Id.* at 38–43, 111 S.Ct. at 1659–61 (dissenting opinion). The Sixth Circuit relied heavily on this dissent in its discussion in *Willis.*

In *Willis,* the Sixth Circuit assumed that Congress had meant for the term "commerce" to possess the same definition and to have the same effect in both Sections 1 and 2 of the Act, and that because Section 2 of the Act has been read broadly so as to give the Act as great an effect as possible, the exclusion clause of Section 1 should be read just as broadly so as to encompass all employment contracts Congress could reach pursuant to its authority under the Commerce Clause. *Willis,* 948 F.2d at 310–12. Consequently, if an employer is subject to Title VII claims (also promulgated pursuant to Congress' authority under the Commerce Clause) then any employment contracts entered into by that employer with its employees are within the exclusion of Section 1.

*Id.; See also United Electrical, Radio & Machine Workers v. Miller Metal Products,* 215 F.2d 221 (4th Cir.1954).

Conversely, in *DiCrisci* the District Court for the Southern District of New York reasoned that if Congress wanted the exclusion of Section 1 to apply to the full extent of its authority under the Commerce Clause then the inclusion of specific examples of employment such as seamen and railroad employees, and the words "workers engaged in foreign or interstate commerce" would have to be considered mere surplusage, as Congress could have achieved the same result merely by referring to "employment contracts". *DiCrisci,* 807 F.Supp. at 952–53. Therefore, the Court reasoned, the term "commerce" in Section 1 must be read more narrowly than it is read for purposes of Section 2, and should include only the employment contracts of those workers actually engaged in the interstate transportation of goods. *Id.; See also Signal–Stat Corporation v. Local 475,* 235 F.2d 298 (2d Cir.1956), *cert. denied,* 354 U.S. 911, 77 S.Ct. 1293, 1 L.Ed.2d 1428 (1957); *Pietro Scalizitti Construction Co. v. International Union of Operating Engineers, Local No. 150,* 351 F.2d 576 (7th Cir.1965); *Tenney Engineering, Inc. v. United Electrical Radio & Machine Workers of America, (U.E.) Local 437,* 207 F.2d 450 (3rd Cir.1953).

The Eleventh Circuit has not been required to resolve this issue. In *American Postal Workers, Union AFL–CIO v. United States Postal Service,* 823 F.2d 466 (11th Cir.1987), the Court noted the dissension in the other circuits, but stated that regardless of which interpretation of the exclusion clause was correct the Court need not decide the issue because "if any workers are 'actually engaged in interstate commerce', the instant postal workers are." *Postal Workers,* 823 F.2d at 473.

Upon consideration of the various opinions advanced by courts to support their interpretation of the Federal Arbitration Act's exclusion clause, and given the unresolved nature of this question in the Eleventh Circuit, the Court is persuaded that the narrower interpretation applied by the Second, Third and Seventh Circuits should be adopted. It is quite impossible to apply a broad meaning to the term "commerce" in Section 1 and not rob the rest of the exclusion clause of all significance. Moreover, at least one other District Court has interpreted the Eleventh Circuit's opinion in *Postal Workers* as an indication that the exclusion clause should be given the narrower interpretation. *See, Hydrick v. Management Recruiters International, Inc.,* 738 F.Supp. 1434, 1435 (N.D.Ga. 1990) (this position is consistent with holding that postal workers are " 'workers actually engaged in interstate commerce.' ").

Accordingly, because Plaintiff is not a worker actually engaged in moving goods in interstate commerce, Plaintiff's contract does not fall within the exclusion clause of the Federal Arbitration Act, and its arbitration agreement will be enforced pursuant to 9 U.S.C. § 2.

For the foregoing reasons it is

ORDERED AND ADJUDGED that Defendants' Motion is GRANTED in part and DENIED as follows:

1.) Plaintiff's claims against the individual Defendants Murphy, Shaub and Hall in their individual capacities for violations of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e, *et seq.,* are hereby DISMISSED with prejudice;

2.) Plaintiff's claims against the individual Defendants Murphy, Shaub and Hall in their individual capacities for violations of the Florida Human Rights Act are hereby DISMISSED with prejudice;

3.) Defendant's Motion to Dismiss Plaintiff's claims for intentional infliction of emotional distress is hereby DENIED;

4.) The parties are hereby Ordered to submit the remaining claims alleging violations of Title VII and intentional infliction of emotional distress to arbitration pursuant to the provisions contained in Plaintiff's employment contract. All proceedings in this action shall be stayed pending arbitration of the parties' dispute. *See Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698, 700 (11th Cir.1992) ("[I]f the arbitration proceedings are somehow legally deficient she may return