June VERNON and Delroy, Vernon, Plaintiffs,

v.

MEDICAL MANAGEMENT ASSOCIATES OF MARGATE, INC. d/b/a Margate Medical Center, Michael Scheer, M.D. and Laura Ebersold, Defendants.

No. 95–6613–CIV.

United States District Court, S.D. Florida.

Jan. 16, 1996.

---

C.J. Keith, Ft. Lauderdale, FL, for Plaintiffs.

Leonard K. Samuels, Ft. Lauderdale, FL, for Defendants.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

MARCUS, District Judge.

THIS CAUSE comes before the Court upon Defendant Margate Medical Center's Motion to Dismiss Counts II–VII of the Plaintiff's Complaint, filed August 18, 1995; Defendant Laura Ebersold's Motion to Dismiss Counts I–VII of the Plaintiff's Complaint, filed August 18, 1995; and Defendant Michael Scheer's Motion to Dismiss Counts I, III–IV and VII of the Plaintiff's complaint, filed August 21, 1995. After a thorough review of the record and pleadings, and for the reasons stated below, Defendant Scheer's motion to dismiss is GRANTED as to Count I and DENIED as to Counts III, IV and VII. Defendant Ebersold's motion to dismiss is GRANTED in its entirety, and the complaint is dismissed as to Ebersold. Defendant Margate's motion to dismiss is GRANTED as to Count VI and DENIED as to Counts II, III, IV, V and VII. The Plaintiff shall file within ten (10) days of the date of this Order an amended complaint in order to allege for purposes of Count VII that she was married to Delroy Vernon at the time of the Defendants' alleged acts of misconduct.

#### I.

The Plaintiff, June Vernon, served as a receptionist at the Broward County office of Defendant Medical Management Associates of Margate, Inc., d/b/a Margate Medical Center ("Margate"), which is engaged in the business of providing medical services to its clients. Defendant Michael Scheer, a medi-

cal doctor employed by Margate, supervised Vernon during her employment with Margate. Defendant Laura Ebersold also exercised supervisory responsibilities over the Plaintiff.

According to the complaint, Scheer engaged in repeated acts of sexual harassment targeted at the Plaintiff. Complaint, at ¶ 12. The alleged acts of misconduct included touching, squeezing, hugging, tickling and the making of lewd remarks. *Id.* Ebersold allegedly participated in this pattern of harassment by failing to take action to halt the offending conduct, despite being on notice of Scheer's wrongful acts. *Id.* at ¶ 13. When Vernon informed Ebersold of the offensive environment, Ebersold allegedly responded that Vernon would have to "deal with it herself." It is also alleged that Ebersold told Vernon not to complain about Scheer's alleged conduct because "if they had to choose between the two employees, they would choose the Doctor and discharge [the Plaintiff]." *Id.* Despite this warning, Vernon proceeded to file a charge with the Broward County Human Rights Division. According to the complaint, Margate responded by changing her work schedule and transferring her to other medical centers that it owned and operated. As a result of these events, Vernon was forced to quit her employment with Margate.

The Plaintiff filed this lawsuit on July 3, 1995, seeking reinstatement, back pay, punitive damages, injunctive relief and a declaratory judgment. Count I of the complaint alleges that the Defendants constructively discharged the Plaintiff by creating or permitting a sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Count II alleges that the Defendants are liable for acts of battery committed by Michael Scheer. Count III alleges that the Defendants are liable for invasions of privacy committed by Scheer. Count IV alleges that the Defendants are liable for the tort of intentional infliction of emotional distress in light of Scheer's conduct. Count V alleges that the

Defendants are liable for acts of false imprisonment committed by Scheer. Count VI alleges that Defendants Margate and Ebersold are liable for negligence, by failing to use reasonable care in responding to the complaints about Dr. Scheer that the Plaintiff had lodged. Count VII is brought by Delroy Vernon (June's husband), and asserts that the Defendants are responsible for a loss of consortium with his wife. Counts II through VII of the complaint arise under Florida law.

Each of the Defendants has filed a motion to dismiss some or all of the complaint. The Defendants raise various substantive grounds for dismissal, and, in the alternative, argue that this Court should exercise its discretion under the supplemental jurisdiction statute, 28 U.S.C. § 1367(c), to dismiss the Plaintiff's state law claims. The Plaintiff filed a combined response to these motions on September 28, 1995.[1] Scheer replied on October 5, 1995, while Margate and Ebersold filed a consolidated reply on October 18, 1995. Ebersold also filed a Notice of Supplemental Authority on November 30, 1995.

## II.

The purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of the statement of claim for relief. It is read alongside Rule 8(a) of the Federal Rules of Civil Procedure, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." This motion is not designed to strike inartistic pleadings or to provide a more definite statement to answer an apparent ambiguity. Thus the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto. *See* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 at 590–92 (1969) (Wright & Miller). Moreover, for the purposes of the motion to dismiss, the complaint must be construed in a light most favorable to the plaintiff and the factual allegations taken as true. *See SEC v. ESM Group, Inc.,* 835 F.2d 270, 272 (11th Cir.), *reh'g denied,* 840 F.2d

---

**1.** Local Rule 7.1(C)(1) governs the time frame for filing a response to pending motions. The Plaintiff had an obligation to file a response to the Defendants' motions on or before September 5, 1995. No response was filed until September 28, 1995, over three weeks after the deadline and on the eve of a court-ordered status conference. Nevertheless, in the interest of resolving these motions on the merits, we will consider the arguments raised in the Plaintiff's response.

25, *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988).

According to the Eleventh Circuit: [T]he Supreme Court has stated that the "accepted rule" for appraising the sufficiency of a complaint is "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Tiftarea Shopper, Inc. v. Georgia Shopper, Inc.,* 786 F.2d 1115, 1117–18 (11th Cir. 1986) (quoting *Conley* ).

*Id.* A complaint may not be dismissed because the plaintiff's claims fail to support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory. *Robertson v. Johnston,* 376 F.2d 43 (5th Cir.1967).[2] We hasten to add that this motion is viewed with disfavor and rarely granted. *See e.g., Madison v. Purdy,* 410 F.2d 99, 100 (5th Cir.1969); *International Erectors, Inc. v. Wilhoit Steel Erectors & Rental Service,* 400 F.2d 465, 471 (5th Cir.1968) (noting that "dismissal of a claim on the basis of barebone pleadings is a precarious disposition with a high mortality rate"). The pleadings must show, in short, that the Plaintiff has no claim before the 12(b)(6) motion may be granted. It is against this standard that we consider the Defendants' motion to dismiss.

#### A.

Ebersold and Scheer have moved to be dismissed from Count I of the complaint. Count I alleges that both of these Defendants are liable in their individual capacities for alleged violations of Title VII. Ebersold and Scheer assert that, under controlling Eleventh Circuit precedent, there is no individual liability under the statute. We agree.

The language of Title VII creates liability for acts of employment discrimination attributable to an "employer." 42 U.S.C. § 2000e(b) defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each

working day in each of twenty or more calendar weeks in the current or preceding calendar year, *and any agent of such person.*" (emphasis added). The statute's reference to "any agent" seems to encompass a Title VII action against an individual agent. At least prior to 1991, the Eleventh Circuit may have suggested this view of the statute. *See Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1316 n. 1 (11th Cir.), *reh'g denied,* 874 F.2d 821 (1989); *Williams v. City of Montgomery,* 742 F.2d 586, 588–89 (11th Cir.), *cert. denied,* 470 U.S. 1053, 105 S.Ct. 1756, 84 L.Ed.2d 819 (1985).

In *Steele,* for example, a female employee (Steele) brought an action against a corporate employer and one of the corporation's officers (Bucknole). The Plaintiff alleged that the corporation could be liable under Title VII for various acts of sexual harassment perpetrated by the officer. The corporate defendant filed a motion to dismiss, asserting that it could not be held responsible for the misconduct of its officer. The district court granted the motion, and the Eleventh Circuit affirmed on appeal, holding that an employer is not liable for the acts of its employees unless it had notice of the employee's misconduct. In a footnote, however, the Court of Appeals added the following language:

> Steele misconstrues the concept of direct liability. Bucknole, an agent of the corporate employer, *is directly liable for his actions that violate Title VII.* Likewise, the corporate employer would be directly liable for his actions that violate Title VII. Likewise, the corporate employer would be directly liable for Bucknole's actions taken within the scope of their agency. However, when Bucknole acts outside the scope of the agency, the corporate employer can only be liable indirectly if it knew or should have known of Bucknole's actions and failed to take prompt remedial action.

867 F.2d at 1311 n. 1 (emphasis added).

Notwithstanding this dictum, in *Busby v. City of Orlando,* 931 F.2d 764 (11th Cir. 1991), the Eleventh Circuit stated unequivo-

---

**2.** In *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the

former Fifth Circuit handed down prior to October 1, 1981.

cally that there can be no individual liability under Title VII. In *Busby*, the plaintiff, a discharged black employee of the Orlando Police Department, brought Title VII and section 1983 claims against the Department and several supervisory officers. The supervisors filed a motion for directed verdict on the cause of action under Title VII. The district court granted the motion, and the Court of Appeals affirmed in a *per curiam* opinion. In doing so, the panel noted that:

> Individual capacity suits under Title VII are ... inappropriate. The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act. We think the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents or by naming the employer directly.

931 F.2d at 772. In the recent case of *Cross v. Alabama*, 49 F.3d 1490 (11th Cir.), *reh'g denied*, 59 F.3d 1248 (1995) (per curiam), the Eleventh Circuit restated its conclusion in *Busby*. The plaintiffs, former female employees of a state mental health institution, filed Title VII charges against the state and various supervisors (Horsley, Poundstone and Stricklin). After a jury trial, the court entered judgment on the Title VII claims against the supervisors in their individual capacities. Reviewing the supervisors' motion for a new trial or judgment as a matter of law, the Court of Appeals offered the following analysis:

> Horsley, in his individual capacity, also contends that he is not an "employer" within the meaning of Title VII. We agree. In *Busby* we held [that individual capacity suits under Title VII are inappropriate]. Therefore, the appellees' Title VII are properly rendered against the Department through Horsley, Poundstone and Stricklin in their official, not individual, capacities. To the extent the district court ruled otherwise, we reverse.

49 F.3d at 1504 (citing *Busby*, 931 F.2d at 772). Under *Busby* and *Cross*, therefore, a Title VII plaintiff cannot seek relief against a supervisor in his or her individual capacity. In reaching this conclusion, the Eleventh Circuit has, in essence, assumed that the statute's reference to "any agent" as part of the definition of "employer" merely confirms that employers can be held liable for acts of discrimination by their agents. As a result, Vernon's cause of action under Title VII must be dismissed as to both Ebersold and Scheer. Vernon's recourse, if any, is against her former employer, Margate.

Vernon argues that *Busby* is distinguishable from the instant proceeding. According to the Plaintiff, *Busby* involved claims of racial, rather than sexual harassment and concerned a public, rather than private, employer. However, nothing in the language of that case suggests that its discussion of individual liability under Title VII is limited to claims of racial harassment against public employers. Indeed, the Court of Appeals expressly relied on *Busby* as the basis for its holding in *Cross*, a sexual harassment case. Vernon also suggests that *Steele*, not *Busby* or *Cross*, is the law of this Circuit for purposes of individual capacity suits under Title VII. We disagree. *Steele* concerned the issue of corporate liability under the statute, and only referred to the possibility of direct, individual liability in dicta in a footnote. Moreover, to the extent that *Steele* addressed the precise question before us, we believe the Eleventh Circuit repudiated the language of that case when it decided *Busby* and *Cross*. All of the district courts in this Circuit addressing the question have concluded that *Busby* and *Cross*, rather than *Steele*, are controlling on this issue. *See, e.g., Albert v. National Cash Register Co.*, 874 F.Supp. 1328, 1330 (S.D.Fla.1994) (following *Busby* and dismissing Title VII claim against an individual defendant); *Dickinson v. McCarty*, 1994 WL 706979 (S.D.Fla.1994) (same). For the foregoing reasons, the motions to dismiss Count I as to Ebersold and Scheer must be GRANTED. We emphasize, however, that the Plaintiff is entitled to proceed with her Title VII claim against Margate.

### B.

Margate and Ebersold have moved to dismiss Count II of the complaint, to the extent that it seeks to hold them liable for alleged acts of battery committed by Scheer. The allegations in Count II state that Scheer engaged in a pattern of offensive touching of

the Plaintiff, and that as a direct and proximate result of this touching the Plaintiff has suffered various injuries. Count II also alleges that:

23. [Ebersold] knew about the repeated batteries upon [Vernon] and failed to take corrective measures or to discipline [Scheer] for his attacks on [Vernon] and encouraged the attacks ... by her inaction.

24. [Ebersold] sought to advance the financial interests of [Margate] by refusing to discipline [Scheer] and refraining from taking any action to discourage [Scheer]'s attacks upon [Vernon].

Complaint, at ¶ 23–24. Margate and Ebersold contend that these allegations are insufficient to state a claim of battery against them.

▪ In order to state a cause of action for battery under Florida law, the plaintiff must allege that the tortfeasor made some form of harmful or offensive contact, and that he or she intended to cause the contact. *See Chorak v. Naughton,* 409 So.2d 35, 39 (Fla. 2nd Dist.Ct.App.1981).[3] Vernon does not allege that Ebersold made any harmful or offensive contact with her. Instead, the Plaintiff suggests that, by failing to prevent the alleged acts of battery by Scheer, Ebersold can be liable for Scheer's battery on a "concert of action" theory. Under this doctrine:

All those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify or adopt his acts done for their benefit, are equally liable with him.

*Ray v. Cutter Laboratories,* 744 F.Supp. 1124, 1127 (M.D.Fla.1990) (citing William Prosser, *The Law of Torts* (4th ed. 1971)). Nowhere in the complaint does Vernon allege that Ebersold acted in concert with Scheer in committing the alleged acts of battery, let alone that these two Defendants formulated a "common plan" to engage in harmful or offensive contact the Plaintiff. The bare allegation that Ebersold failed to discipline Scheer after she learned about the alleged batteries, or that Ebersold did not respond to the Plaintiff's repeated objections to Scheer's conduct, is insufficient to state a claim against Ebersold for battery under the "concert of action" doctrine.

▪ The Plaintiff also attempts to hold Margate liable for Scheer's acts of battery. First, the Plaintiff suggests that "Margate is strictly liable because the actions of Ebersold constitute a quid pro quo type violation of Title VII." Response, at 4. Vernon offers no support whatsoever for this argument, which misapprehends the difference between Title VII and pendent state law claims arising out of acts constituting sexual harassment. Second, she asserts that "where an employee is seeking to advance the interests of his employer through wrongful conduct, the employer may be held to respond in damages." Response, at 4. Vernon offers no case law to support this proposition. However, we read this argument as an attempt to hold Margate liable on a theory of respondeat superior. We recognize that under certain circumstances an employer can be held vicariously liable for intentional torts committed by one of its employees, if the employee acted within the real or apparent scope of the employer's business. *City of Miami v. Simpson,* 172 So.2d 435, 437 (Fla. 1965). If the tort is activated by a purpose to serve the employer, then the employer can be held responsible. *Id.*

In the present case, the Plaintiff alleges that Dr. Scheer "was acting within the [course] and scope of his employment when he engaged in this offensive touching of June Vernon and engaged in the offensive activities against June Vernon in an effort to advance the financial interests of the employ-

---

**3.** The parties recognize that our examination of Vernon's tort claims must be guided by reference to Florida law and the decisions of the Supreme Court of Florida. *See Geary Distributing Co. v. All Brand Importers, Inc.,* 931 F.2d 1431, 1434 (11th Cir.1991), *cert. denied,* 502 U.S. 1074, 112 S.Ct. 971, 117 L.Ed.2d 136 (1992); *Royal Health Care Services, Inc. v. Jefferson–Pilot Life Ins. Co.,* 924 F.2d 215, 216 (1991). Where the Supreme Court of Florida has not addressed a particular issue, we are bound by decisions of the Florida district courts of appeal that address the disputed question, unless there is an indication that the Supreme Court might not adhere to the district court's decision. *See Maseda v. Honda Motor Co.,* 861 F.2d 1248, 1257 n. 14 (11th Cir.1988).

er." Complaint, at 22. For purposes of a motion to dismiss, all well-pleaded allegations must be accepted as true. Accordingly, Margate is not, at this point, entitled to a dismissal of Count II.[4]

### C.

All of the Defendants have moved to dismiss Count IV of the complaint, which asserts that the Defendants are responsible for the tort of outrage.[5] To state a claim for intentional infliction of emotional distress under Florida law, the following four elements must be shown: (1) extreme and outrageous conduct; (2) an intent to cause, or reckless disregard to the probability of causing, emotional distress; (3) severe emotional distress suffered by the plaintiff; and (4) that the conduct complained of caused the plaintiff's severe emotional distress. *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir.), *cert. denied*, 498 U.S. 980, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990). The Defendants do not dispute that Vernon's allegations are sufficient to meet the last three of the prerequisites. However, the Defendants insist that the allegations in the complaint do not rise to the level of outrageousness required under Florida law. To this end, they maintain that no Florida court has allowed a claim for intentional infliction of emotional distress based upon alleged acts of sexual harassment. The Plaintiff responds that the facts alleged in the complaint are sufficient for the limited purpose of withstanding a motion to dismiss under Fed.R.Civ.P. 12(b)(6). We agree.

In *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277 (Fla.1985), the Florida Supreme Court recognized the tort of intentional infliction of emotional distress, and adopted the standard of Section 46, Restatement (Second) of Torts as the appropriate benchmark for the cause of action. *Id.* at 278–79. The comment to section 46 adds the following familiar gloss to this definition:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Metropolitan Life*, 467 So.2d at 278–79 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). The question of what constitutes outrageous conduct is judged by an objective test. *Id.* Moreover, the issue is ordinarily one of law to be resolved the court, rather than a question of fact to be resolved by a jury. *Dependable Life Ins. Co. v. Harris*, 510 So.2d 985, 988 (Fla. 5th Dist.Ct.App. 1987).

Florida courts have allowed claims for intentional infliction of emotional distress in a wide variety of situations. In *Williams*, for example, the Fifth District Court of Appeal reversed the trial court's entry of summary judgment in favor of the defendant where the plaintiff alleged that police officers gratu-

---

4. In reaching this conclusion, we emphasize that the Plaintiff retains the difficult task of establishing by record evidence that Scheer was acting within the scope of his employment when he engaged in the alleged acts of harassment against Vernon. *See id.* (noting that "'although the scope of employment is considerably broader than explicitly authorized acts of the employee, it does not extend to cases in which the servant has stepped aside from his employment to commit a tort which the master neither directed in fact, nor could be supposed, from the nature of his employment, to have authorized or expected the servant to do'") (quoting *Weiss v. Jacobson*, 62 So.2d 904, 906 (Fla.1953)). We note, however, that Florida law recognizes other theories on which an employer might be held liable for the intentional torts of its employees. *See, e.g., Schwartz v. Zippy Mart, Inc.*, 470 So.2d 720, 724

(Fla. 1st Dist.Ct.App.1985) (noting that an employer can be liable for an employee's intentional torts where the employer directs the employee to engage in the tortious conduct, or where the employer's knowing or reckless disregard of the tortious conduct is tantamount to directing the employee to continue his misconduct). At all events, the Plaintiff must meet a heavy burden if she is to withstand a motion for summary judgment or succeed at trial with her intentional tort claims against Margate.

5. We treat Count IV as an attempt to state a claim for the tort of intentional infliction of emotional distress. *See Williams v. City of Minneola*, 575 So.2d 683, 690 (Fla. 5th Dist.Ct.App.1991) (noting that the core of this cause of action is the "outrageousness" of the defendant's conduct).

itously disclosed photographs and videotape from the autopsy of her dead son. 575 So.2d at 690–91. In *McAlpin v. Sokolay*, 596 So.2d 1266, 1268–69 (Fla. 5th Dist.Ct.App.1992), the Fifth District allowed a claim for emotional distress by a hospital patient who had been verbally assaulted and threatened by a physician about a debt she owed to the physician's friend. In *Dominguez v. Equitable Life Assurance Society*, 438 So.2d 58, 61–62 (Fla. 3d Dist.Ct.App.1983), *approved*, 467 So.2d 281 (Fla.1985), the Third District Court of Appeal permitted a cause of action for emotional distress where an insurer falsely accused an injured insured of fabricating his claim. And in *Smith v. Telophase Nat'l Cremation Society, Inc.*, 471 So.2d 163, 166 (Fla. 2nd Dist.Ct.App.1985), the Second District Court of Appeal allowed a cause of action where the defendant failed to dispose of a decedent's ashes in accordance with certain specific instructions.[6]

Margate, Scheer and Ebersold insist that Florida courts impose a higher standard of outrageousness on plaintiffs seeking to recover for emotional distress based on alleged acts of workplace sexual harassment. The Defendants add that, to date, no Florida court has found that any plaintiff has stated a cause of action for this tort in the employment context. We are aware that Florida courts often have rejected claims for intentional infliction of emotional distress in circumstances involving alleged racial or sexual harassment on the job. *See Ponton v. Scarfone*, 468 So.2d 1009, 1011 (Fla. 2d Dist.Ct. App.1985), *rev. denied*, 478 So.2d 54 (Fla. 1985); *Lay v. Roux Laboratories, Inc.*, 379 So.2d 451, 452 (Fla. 1st Dist.Ct.App.1980). This Court also realizes that Federal courts interpreting Florida law have been reluctant to allow this cause of action to go forward. *See Vance v. Southern Bell Tel. & Tel. Co.*, 983 F.2d 1573 (11th Cir.1993), *cert. denied*, — U.S. —, 115 S.Ct. 1110, 130 L.Ed.2d 1075 (1995); *Studstill v. Borg War-*

*ner Leasing*, 806 F.2d 1005 (11th Cir.1986); *Rollins v. McDonnell Douglas Corp.*, 907 F.Supp. 1514 (M.D.Fla.1995); *Watson v. Bally Mfg. Corp.*, 844 F.Supp. 1533 (S.D.Fla. 1993).

▇ While the Defendants are correct in acknowledging that lower Florida courts thus far have been hesitant to find sufficiently "outrageous" conduct based on alleged acts of abuse in the workplace, nothing in Florida law suggests that the standard adopted in *Metropolitan Life* is inapplicable to incidents of sexual harassment in the employment setting. Indeed, this Court is aware of no Florida opinion indicating that *Metropolitan Life* is somehow more exacting simply because the alleged offensive conduct took place in the context of an employer-employee relationship. The viability of a claim for intentional infliction of emotional distress is highly fact-dependent, and turns on the sum of the allegations in the specific case at bar. *Watson*, 844 F.Supp. at 1537 (Florida law); *see also Paroline v. Unisys Corp.*, 879 F.2d 100, 113 (4th Cir.1989) (Virginia law) (stating that "sexual harassment may give rise to a claim for intentional infliction of emotional distress under some circumstances"); *Cummings v. Walsh Construction Co.*, 561 F.Supp. 872, 882 (S.D.Ga.1983) (denying motion for summary judgment and quoting Professor Prosser's observation that while solicitation for sex alone may not be a sufficient predicate for liability, prolonged or repeated invitation, when raised to the point of "hounding" the invitee could lead to liability). Thus, Florida law does not create an absolute prohibition to Vernon's cause of action. Indeed, the Florida Supreme Court suggested just the contrary in *Byrd v. Richardson–Greenshields Securities, Inc.*, 552 So.2d 1099 (Fla.1989). In *Byrd*, the Supreme Court ruled that the Florida's workers' compensation statute does not bar an employee's claim for intentional infliction of emotional distress

---

**6.** In his motion to dismiss, Defendant Scheer suggests that a cause of action for intentional infliction of emotional distress is viable only where the plaintiff has no other remedy for her alleged injuries. Motion, at 14–15. As support for this proposition, Scheer points to language in the Fourth District Court of Appeals' opinion in *Metropolitan Life*. 429 So.2d 1287, 1291 (Fla. 4th Dist.Ct.App.1983). In affirming the lower

court's ruling, however, the Florida Supreme Court simply stated that "[w]e approve the Fourth District's decision insofar as it states that Florida recognizes the tort of intentional infliction of emotional distress." 467 So.2d at 278. The Supreme Court did not (and has not) indicated that this cause of action is unavailable if the plaintiff has other possible causes of action that might redress her alleged harm.

arising out of alleged instances of sexual harassment in the workplace. Although the Supreme Court did not discuss the level of outrageousness needed to state a claim based on workplace harassment, the Court's opinion seems to contemplate that, at least in certain situations, a plaintiff might be able to proceed with an intentional infliction of emotional distress claim on facts similar to those in the instant proceeding.

With these principles in mind, at least three courts interpreting Florida law have found that the plaintiff succeeded in stating a claim for intentional infliction of emotional distress. In *Stockett v. Tolin,* 791 F.Supp. 1536, 1556 (S.D.Fla.1992), this Court held that cumulative sexual harassment, including repeated groping and kissing, offensive touching and other physical abuse and attacks, as well as repeated verbal licentiousness, could be viewed cumulatively by an ordinarily prudent person as outrageous. Similarly, in *Urquiola v. Linen Supermarket, Inc.,* 1995 WL 266582 (M.D.Fla.1995), the court denied the defendant's motion to dismiss after noting that the plaintiff's allegations "went beyond mere harassment or verbal abuse." *Id.* at 4. The alleged conduct included constant sexually explicit, demeaning and vulgar language accompanied by repeated acts of kissing, groping and other physical abuse. Finally, in *Albert v. National Cash Register,* another court in this District denied a motion to dismiss after explaining that the plaintiff's allegations established a "pervasive pattern of constant harassment" based on her gender, race and religion. 874 F.Supp. at 1331.

Courts in other jurisdictions also have recognized that allegations of frequent touching or fondling are sufficient to state a claim for intentional infliction of emotional distress. *See, e.g., Prunty v. Arkansas Freightways, Inc.,* 16 F.3d 649, 654 (5th Cir.1994) (affirming district court's finding in favor of plaintiff where the alleged outrageous conduct included repeated acts of verbal harassment and offensive touching); *Bustos v. Illinois Inst. of Cosmetology, Inc.,* 1994 WL 710830 (N.D.Ill.1994) (denying defendant's motion for summary judgment where the plaintiffs were repeatedly hugged, kissed, groped and subjected to racial and sexual innuendos); *Stewart v. Thomas,* 538 F.Supp. 891, 894 (D.D.C.1982) (finding outrageous conduct where the complaint alleged that the defendant touched the plaintiff in a sexual manner, caressed her body, attempted to kiss her and verbally pressured her for sexual relations).

The touchstone of these cases is the presence of relentless physical, as well as verbal, harassment. It is the element of offensive, non-negligible physical contact that, when coupled with persistent verbal abuse and threats of retaliation, can under some facts and circumstances constitute conduct of sufficient outrageousness to support a claim for intentional infliction of emotional distress. This rule of thumb is consistent with the accepted principle that:

> Liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities.... [P]laintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.

*Metropolitan Life,* 467 So.2d at 279 (citing Restatement (Second) of Torts § 46 cmt. d)); *Albert,* 874 F.Supp. at 1331 (quoting this language). None of the cases cited by the Defendants for the proposition that Florida law is hostile to this tort in sexual harassment cases involved repeated acts of unwelcome *physical contact and abuse* in addition to allegations of verbal abuse. In *Ponton,* for example, the court rejected the plaintiff's claim based on the mere allegation that her employer attempted to induce her to join in a sexual liaison. 468 So.2d at 1010. In *Studstill,* the Eleventh Circuit upheld the district court's rejection of the plaintiff's claim based on dirty jokes, off-color comments and profane suggestions after noting that "Florida case law indicates that verbal sexual harassment [of this type] ... does not constitute conduct sufficiently heinous to support a claim for intentional infliction of emotional distress." 806 F.2d at 1008. And in *Vance,* the Eleventh Circuit upheld the district court's rejection of the plaintiff's claim after cataloguing a list of racially motivated conduct that included verbal torment and "hanging a rope noose over [her] work station," but did not involve direct physical harassment.

*See also Watson,* 844 F.Supp. at 1537 (finding no cause of action based on pattern of relentless verbal harassment); *Lay,* 379 So.2d at 455 (finding employer's threats to fire an employee coupled with "humiliating language, vicious verbal attacks [and] racial epithets" insufficient to state a claim). As this review of the case law makes clear, the intentional infliction of emotional distress claims rejected by courts applying Florida law did not turn on allegations of deliberate and pervasive physical (as well as verbal) abuse.

In this case, the Plaintiff makes the following allegations concerning Defendant Scheer:

12. Michael Scheer sexually harassed June Vernon by

A. Touching June Vernon's buttocks repeatedly without the consent of June Vernon and over her objections.

B. Touching June Vernon's breasts repeatedly without the consent of June Vernon and over her protests.

C. Squeezing June Vernon's nipples repeatedly without the consent of June Vernon and over her objections.

D. Touching the belly button of June Vernon repeatedly without the consent of June Vernon and over her objections.

E. Hugging June Vernon repeatedly without her consent and over her objections.

F. Blowing on June Vernon's neck repeatedly without her consent and over her objections.

G. Tickling June Vernon repeatedly without her consent and over her objections.

H. Picking up June Vernon's legs while she was sitting in a chair so that he might look under her skirt without her consent and over her objections.

I. Remarking about the size of his penis to June Vernon without her consent and over her objections.

J. Remarking about his sexual prowess and about his sexual liaisons to June Vernon without her consent and over her objections.

Complaint, at ¶ 12. Vernon's complaint, taken as true and reviewed in the light most favorable to the Plaintiff, alleges a pattern of persistent verbal and physical abuse that cul-minated in her constructive discharge. We are unwilling to hold that, as a matter of law, the sum of these allegations are insufficient to support a claim for intentional infliction of emotional distress. If established to be true, Scheer's conduct clearly constitutes the kind of behavior that is atrocious and utterly intolerable in a civilized community. *See Urquiola,* 1995 WL 266582 at 4; *Stockett,* 791 F.Supp. at 1556. As a result, Defendant Scheer's motion to dismiss Count IV as to him must be denied.

■ Ebersold argues that, even if the complaint states a claim against Scheer, the allegations are insufficient to impose liability on her. In the complaint, Vernon asserts the following:

40. Laura Ebersold knew about the outrageous conduct of Michael Scheer against June Vernon and failed to take corrective measures or to discipline [Scheer] for his attacks ... and encouraged the attacks on June Vernon by Michael Scheer by her inaction.

41. Laura Ebersold sought to advance the financial interests of the employer by refusing to discipline Michael Scheer, and from refraining from taking any action to discourage [Scheer]'s attacks upon June Vernon.

Complaint, at ¶ 40–41. It is clear that these allegations are insufficient to state a claim for intentional infliction of emotional distress against Ebersold. However outrageous Scheer's conduct might have been, Ebersold's failure to respond to Vernon's objections, at least under the facts and circumstances alleged in the complaint, does not rise to the level of outrageousness required to state a cause of action. Therefore, Count IV must be dismissed as to Ebersold.

■ Margate argues that none of the allegations supporting Count IV provide an adequate basis for holding it liable for Scheer's alleged misconduct. Once again, we disagree. In paragraph 39, Vernon alleges that Scheer "was acting within the [course] and scope of his employment when he engaged in this offensive touching of June Vernon and engaged in the offensive activities against June Vernon in an effort to advance the financial interests of the employer."

This allegation, which we must accept as true at this juncture, is sufficient for the limited purpose of withstanding a Rule 12(b)(6) motion. As a result, Margate's motion to dismiss Count IV as to it must be denied.

### D.

All of the Defendants have moved to dismiss Count III of the complaint. According to the Defendants, the conduct alleged in the complaint is insufficient to support relief on a theory of invasion of privacy. We believe that the Defendants' view of this tort reads the Florida case law more narrowly than is warranted.

■ Under Florida law, the tort of invasion of privacy consists of four distinct wrongs: "1) the intrusion upon the plaintiff's physical solitude; ... 2) publicity which violates the ordinary decencies; 3) putting the plaintiff in a false ... position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use." *Phillips v. Smalley Maint. Servs., Inc.,* 711 F.2d 1524, 1533 (11th Cir. 1983). Vernon's complaint appears to implicate the first of these wrongs, which under Florida law encompasses an "intrusion upon plaintiff's physical solitude or seclusion, as by invading plaintiff's home, or other quarters, or an illegal search of his shopping bag in a store." *Guin v. City of Riviera Beach,* 388 So.2d 604, 606 (Fla. 4th Dist.Ct.App.1980) (quoting Prosser, *The Law of Torts* § 117 (4th ed. 1971)).

The Defendants state that "allegations of sexual harassment involving touching and verbal statement are insufficient to state a claim" for invasion of privacy. *See* Margate's Motion to Dismiss, at 4. There is nothing in Florida law, however, to support so sweeping an assertion. In *Stockett,* for example, this Court held that "the repeated and offensive touching of the most private parts of Plaintiff's body ... constitutes an intrusion into [the plaintiff's] physical solicitude" amounting to invasion of privacy under Florida law. 791 F.Supp. at 1556. *See also State Farm Fire & Cas. Co. v. Compupay, Inc.,* 654 So.2d 944, 948 (Fla. 3d Dist.Ct. App.) (noting that some Florida courts have recognized an actionable "intrusion" where the plaintiff's person has been touched in an undesired or offensive manner), *rev. denied,*

662 So.2d 341 (Fla.1995); *cf. Hennagan v. Department of Hwy. Safety & Motor Vehicles,* 467 So.2d 748, 750–51 (Fla. 1st Dist.Ct. App.1985) (reversing the trial court's dismissal of an invasion of privacy claim based on an "unlawful touching" by a police officer who sexually assaulted a minor after stopping her on the pretext that she was under suspicion for theft). Florida courts also have acknowledged that, at least under some circumstances, even comments of a sexual nature made by an employer can be actionable on an invasion of privacy theory. *See Steele,* 867 F.2d at 1315 (noting that Florida law does not preclude an invasion of privacy action for sexually related comments when the comments are accompanied by publication to a large number of people); *compare Ponton,* 468 So.2d at 1010 (rejecting invasion of privacy claim where an employer's verbal attempts to seduce the plaintiff lacked sufficient publication). Courts in other jurisdictions have agreed that allegations of sexual harassment involving touching or verbal abuse can form the basis for an invasion of privacy claim. *See, e.g., Rogers v. Loews L'Enfant Plaza Hotel,* 526 F.Supp. 523, 528 (D.D.C.1981) (finding that the plaintiff stated a claim for invasion of privacy by alleging that her supervisor had repeatedly called her at home and at work in order to make lewd comments about her sex life).

■ In her complaint, Vernon has alleged that Scheer engaged in a pattern of persistent touching, squeezing, fondling, hugging, blowing and tickling, along with the repetition of lewd and vulgar sexual remarks. She asserts that Scheer groped her buttocks and breasts, two of the most "private" areas of the body. Complaint, at ¶ 12(A)–(C). She also maintains that, on at least one occasion, Scheer "picked up [her] legs while she was sitting in a chair so that he might look under her skirt." *Id.* at ¶ 12(H). These allegations, read together, reflect a series of unwelcome and unreasonable intrusions into the most intimate areas of the Plaintiff's person. Under these facts and circumstances, therefore, we are unable to say that the Plaintiff cannot recover on a theory of invasion of privacy. We emphasize, however, that our ruling does not address the question of

whether the Plaintiff will be able to support her allegations with record evidence.

The Defendants place a great deal of emphasis on language in a decision from the United States District Court for the District of Kansas, *Haehn v. City of Hoisington,* 702 F.Supp. 1526 (D.Kan.1988). In *Haehn,* the district court dismissed an invasion of privacy claim under Kansas law based on allegations of occasional grabbing, touching and rubbing of the plaintiff's shoulders. The Court quoted Professor Prosser for the proposition that "there must be something in the nature of prying or intrusion, and that mere noises which disturb a church congregation, or bad manners, harsh names and insulting gestures in public are not enough." *Id.* at 1532 (quoting Prosser & Keaton, *The Law of Torts* 854–55 (5th ed. 1984)). In this case, by contrast, Vernon has alleged a pattern of repeated verbal and physical harassment, including the unwanted touching of her buttocks and breasts. The intrusiveness and relentlessness of Scheer's alleged conduct distinguishes this case from the "bad manners" and "insulting gestures" at issue in *Haehn.* For all of these reasons, Vernon's allegations are sufficient to state a cause of action against Scheer for invasion of privacy.[7]

■■■ Ebersold insists that nowhere in the complaint does the Plaintiff assert that Ebersold (as opposed to Scheer) intruded on her person or private affairs. In response, Vernon insists that Ebersold can be liable for Scheer's misconduct on a "concert of action" theory. Once again, this argument is without merit. The allegations in the complaint do not indicate that Ebersold and Scheer agreed to a joint plan to commit the alleged acts of physical intrusion, or that Ebersold took affirmative steps to further such a plan. Indeed, Plaintiff does not even allege in the complaint that Ebersold and Scheer acted in

concert. For these reasons, Count III must be dismissed as to Ebersold.

■■■ Margate maintains that the allegations in Count III are inadequate to hold it liable for Scheer's acts of intrusion. Once again, we disagree. In paragraph 30, Vernon alleges that Scheer "was acting within the [course] and scope of his employment when he engaged in this offensive touching of June Vernon and engaged in the offensive activities against June Vernon in an effort to advance the financial interests of the employer." This allegation, which we must accept as true at this juncture, is sufficient for the limited purpose of withstanding a Rule 12(b)(6) motion. As a result, Margate's motion to dismiss Count III as to it must be denied. Accordingly, Margate's motion to dismiss Count III must be denied.

### E.

■■■ Ebersold and Scheer have moved to dismiss Count V of the complaint, to the extent that it attempts to hold them liable for Scheer's alleged false imprisonment. The complaint alleges that:

43. During her employment with the employer, June Vernon, on several occasions, went into the office of Michael Scheer, which office was located on the premises of the employer for the purpose of discussing patient files.

44. Michael Scheer falsely imprisoned June Vernon by positioning himself between the only means of escape from his office and June Vernon and attacking June Vernon, putting his hands on her breasts, buttocks and person, and prohibiting June Vernon from leaving his office for an extended period of time....

---

**7.** In his motion to dismiss, Scheer suggests that because his alleged acts of verbal harassment occurred in a public place, there can be no action for invasion of privacy. Motion, at 8 (explaining "Vernon could not have a reasonable expectation of freedom from potentially offensive comments in her work place, a public domain"). This Court and others have recognized, however, that acts of sexual harassment that involve unwelcome physical contact in the workplace can be sufficiently intrusive to state a claim. *See Stockett,* 791 F.Supp. at 1556; *Rogers,* 526

F.Supp. at 528. Moreover, at least some of Scheer's alleged acts of physical harassment, including one incident when he "[picked] up June Vernon's legs while she was sitting in a chair so that he might look under her skirt," violate any reasonable notions of privacy, even if the episodes took place in public. Scheer raises the additional argument that Vernon's privacy claim simply duplicates her battery claim in Count II. Nothing in Florida law precludes Vernon from raising alternative theories for relief based on a common nucleus of operative fact, however.

48. Laura Ebersold knew about the repeated false imprisonments of June Vernon and failed to take corrective measures or to discipline Michael Scheer for his attacks ... and encouraged the attacks on June Vernon by Michael Scheer by her inaction.

49. Laura Ebersold sought to advance the financial interests of the employer by refusing to discipline Michael Scheer, and from refraining from taking any action to discourage [Scheer]'s attacks upon June Vernon.

Complaint, at 43–44, 48–49.

Ebersold insists that nowhere in the complaint does the Plaintiff assert that she was restrained or otherwise falsely imprisoned by Ebersold. Vernon responds that Ebersold can be liable for Scheer's misconduct on a "concert of action" theory. As discussed above, this argument is without merit. The allegations in the complaint do not indicate that Ebersold and Scheer agreed to a joint plan to commit the alleged acts of false imprisonment, or that Ebersold took affirmative steps to further this plan. Indeed, Plaintiff does not even allege in the complaint that Ebersold and Scheer acted in concert. For these reasons, Count V must be dismissed as to Ebersold.

■ Margate maintains that Count V is insufficient to hold it liable for Scheer's acts of false imprisonment. This Court is unpersuaded. In paragraph 47, Vernon alleges that Scheer "was acting within the [course] and scope of his employment when he engaged in this false imprisonment of June Vernon and engaged in the offensive activities against June Vernon in an effort to advance the financial interests of the employer." This allegation, which we must accept as true at this juncture, is sufficient for the limited purpose of withstanding a Rule 12(b)(6) motion. Accordingly, Margate's motion to dismiss Count V must be denied.

### F.

Ebersold and Margate have moved to dismiss Count VI of the complaint, which alleges that these Defendants are liable for negligence. To be specific, the complaint asserts that:

51. Laura Ebersold owed a duty to June Vernon to establish procedures which would deter and discourage the sexual harassment of, battery of, invasion of the privacy of, the visiting of outrageous conduct upon and the false imprisonment of June Vernon and, to implement a means of enforcing the procedures which would discourage the sexual harassment ... and to investigate complaints of the sexual harassment ...

53. Laura Ebersold ... breached her duty to [Vernon] to establish procedures which would deter the sexual harassment of June Vernon [and] breached her duty ... to implement a means of enforcing the procedures which would discourage the sexual harassment ... [and] breached her duty ... to investigate complaints ...

54. The duties owed by Laura Ebersold to June Vernon were a responsibility of her employment in a supervisory role with the employer, and Laura Ebersold was acting within the [course] and scope of her employment at the time that she breached her duties.

Complaint, at ¶ 51, 53–54. Thus, it appears that Vernon has sought to hold Ebersold liable for her own alleged acts of negligence, and also attribute these acts to Margate on a theory of respondeat superior.

■ As a threshold matter, we note that Florida law does not recognize a common law cause of action for negligent failure to maintain a workplace free of sexual harassment. Many courts have acknowledged that Florida does not recognize a tort of common law sexual harassment against an employer or a supervisor. *Robertson v. Edison Bros. Stores, Inc.,* 1995 WL 356052 (M.D.Fla.1995); *Maiorella v. Golf Academy of the South,* 1993 WL 463211 (M.D.Fla.1993); *Fowler v. Taco Viva,* 646 F.Supp. 152, 158 (S.D.Fla. 1986) (citing *Cummings v. Dawson,* 444 So.2d 565, 566 (Fla. 1st Dist.Ct.App.1984)). We recognize that Florida courts often have confirmed the existence of a cause of action based on the negligent hiring, retention or supervision of an employee. *See, e.g., Tallahassee Furniture Co. v. Harrison,* 583 So.2d 744, 750 (Fla. 1st Dist.Ct.App.1991), *rev. denied,* 595 So.2d 558 (Fla.1992). Vernon, how-

ever, does not allege that Margate and Ebersold were negligent in hiring, retaining or supervising Scheer. Instead, the complaint alleges that Margate (through Ebersold) failed to establish "procedures which would deter the sexual harassment of June Vernon" or "a means of enforcing the procedures which would discourage the sexual harassment," and failed to "investigate complaints." Complaint, at ¶ 51–54. These allegations assert nothing more than a failure on the part of Margate and Ebersold to use reasonable care to prevent the commission of the alleged acts constituting sexual harassment. The Plaintiff has pinpointed no caselaw whatsoever to support the existence of a cause of action based on the alleged omissions.

We are aware that, in *Byrd*, the Florida Supreme Court ruled that the state workers' compensation statute does not bar an employee's claims for assault, intentional infliction of emotional distress and battery when these causes of action arise from alleged instances of sexual harassment in the workplace. The *Byrd* court noted that through Title VII and the Florida Civil Rights Act, the federal and state governments have established an "overwhelming public policy" prohibiting sexual harassment in the workplace. 552 So.2d at 1003. Although the Court's opinion contains expansive language which might suggest that it was recognizing a new tort, when read carefully and considered in the context of the specific facts of *Byrd*, it seems clear that the Florida Supreme Court did not intend to establish a new common law tort related to sexual harassment. Rather, it appears that the Court simply adopted the more narrow position that corporations that allow employees to commit intentional torts such as battery, intentional infliction of emotional distress or assault as part of a sexually harassing environment can no longer hide behind the workers' compensation exclusion rule to escape liability. In fact, the Supreme Court specifically limited its holding by stating:

> We express no opinion as to whether petitioners in this case have alleged sufficient facts to state a cause of action under the common law, an issue we do not reach.

552 So.2d at 1105. For these reasons, *Byrd* does not stand for the proposition that a common law claim for negligent failure to eliminate sexual harassment can be maintained under Florida law. This Court has been unable to find a single Florida case recognizing such a cause of action. Accordingly, Count VI must be dismissed in its entirety.[8]

---

8. Margate and Ebersold raise an additional argument for dismissal, insisting that Florida's "impact rule" precludes recovery for mental anguish without some physical injury proximately caused by the alleged negligence. *See Childress v. Prudential Ins. Co. of America*, 1994 WL 487574 (M.D.Fla.1994); *Forde v. Royal's, Inc.*, 537 F.Supp. 1173, 1175 (S.D.Fla.1982) (citing *Kirksey v. Jernigan*, 45 So.2d 188 (Fla.1950)). Vernon does allege that the intentional torts committed by Scheer involved some level of physical impact and resulted in injury. Complaint, at ¶ 55. Vernon does not allege, however, that the alleged negligent conduct of Ebersold and Margate encompassed an impact with the Plaintiff or otherwise resulted in physical injury. Vernon attempts to overcome this omission by arguing that Ebersold is responsible for the physical impact attributable to Scheer on a "concert of action" theory. As discussed above, however, the Plaintiff's allegations are insufficient to support this theory of liability. Margate raises the further argument that Vernon's negligence claims against it are barred by the Florida Workers' Compensation Act. *See* Fla.Stat. § 440.10 *et seq.* Section 440.11(1) of the Act provides that employees who are covered by workers' compensation are subject to the exclusive remedies of the statute for injuries that arise out of and in the course of employment as a result of the negligence of their employer. *See Lawton v. Alpine Engineered Products, Inc.*, 498 So.2d 879, 881 (Fla.1986). In *Byrd*, the Florida Supreme Court recognized that the Act does not preclude claims against an employer arising out of intentional torts related to sexual harassment. In Count V, however, Vernon does not attempt to hold Margate liable for Scheer's alleged intentional torts. Instead, she attempts to hold Margate responsible for Ebersold's negligent failure to resolve repeated complaints about Scheer's misconduct. In support of her position, Vernon relies on the holding in *Gomez v. Metro–Dade County*, 801 F.Supp. 674 (S.D.Fla.1992). In that case, a court in this District held that section 440.11(1) did not bar a claim based on the employer's negligent retention and supervision of the employee who committed the alleged acts of harassment. 801 F.Supp. at 683. In light of our ruling that the Plaintiff has failed to state a claim under Florida law, we do not reach the question of whether *Gomez* misapprehends *Byrd*, or the extent to which Fla.Stat. § 440.11(1) otherwise bars the Plaintiff's cause of action for negligent failure to prevent sexual harassment.

### G.

In Count VII of the complaint, Delroy Vernon asserts a claim for loss of consortium. All three of the Defendants have moved to dismiss this Count. First, they insist that a valid marriage *at the time of the injury* is a necessary and indispensable element of any cause of action for loss of consortium. *See Scarfato v. National Cash Register Corp.*, 830 F.Supp. 1441, 1442 (M.D.Fla.1993). The Plaintiffs concede that the complaint does not allege that June and Delroy Vernon were married at the time of the alleged torts. However, the Vernons seek leave to amend their complaint to include this allegation. The Defendants do not appear to object to this request, which the Court finds to be appropriate under the circumstances. Therefore, the Plaintiffs shall be afforded leave to file an amended complaint for the sole purpose of adding this allegation to Count VII.

▋ The Defendants next point out that loss of consortium is a derivative claim which is dependent upon the existence of an actionable tort causing harm to the Plaintiff's spouse. *See Gates v. Foley*, 247 So.2d 40, 45 (Fla.1971); *Perdomo v. Jackson Memorial Hospital*, 443 So.2d 298, 300 (Fla. 3d Dist.Ct. App.1983). For the reasons stated in this Order, all of June Vernon's tort claims against Ebersold are dismissed. It follows, therefore, that Delroy Vernon's loss of consortium claim against Ebersold must be dismissed as well. On the other hand, our holding allows at least some of June Vernon's tort claims against Scheer and Margate to go forward. As a result, Delroy Vernon's loss of consortium claim cannot be dismissed as to these two Defendants.

### H.

▋ As a final argument, the Defendants suggest that the Court should decline to exercise supplemental jurisdiction over the state law claims in this case. The exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367, which explains, in pertinent part:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have sup-plemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

\* \* \* \* \* \*

(c) The district court *may decline to exercise supplemental jurisdiction over a claim under subsection (a)* if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(a), (c). Under the statute, even if the claims at issue meet the criteria specified in subsection (c), these claims will not be dismissed unless the Court, in its discretion, chooses to dismiss those causes of action.

The Defendants argue that the state law claims in this case meet the requirements of either subsection (c)(1)—raising novel or complex issues of state law—or (c)(2)—where the state law claims substantially predominate over the federal causes of action. In support of this contention, the Defendants cite to *Winn v. North American Philips Corp.*, 826 F.Supp. 1424, 1425 (S.D.Fla.1993) (exercising discretion to dismiss various pendent state law causes of action in a Title VII case).

Regardless of whether the labels of subsections (c)(1) and (2) may be applied to the state law claims in this lawsuit, we find that it would be a substantial waste of judicial resources to separate out the state claims in this action. All of the causes of action pressed by the Plaintiff share a common nucleus of operative fact, tied to alleged acts of workplace harassment on the part of

Scheer. Indeed, adjudication of all of the remaining claims likely will require "the same witnesses, presentation of the same evidence, and determination of the same, or very similar facts." *Palmer v. Hospital Authority of Randolph County*, 22 F.3d 1559, 1563–64 (11th Cir.1994). In this situation, a district court acts well within its discretion to hear the supplemental claims arising under state law. *Id.* at 1564. Thus, we think that dismissal of the state law causes of action would require an unnecessary duplication of effort by the Florida courts, and we will retain supplemental jurisdiction over these claims.

Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendant Scheer's motion to dismiss is GRANTED as to Count I and DENIED as to Count III, IV and VII. Defendant Ebersold's motion to dismiss is GRANTED in its entirety, and Counts I–VII are dismissed as to Ebersold. Defendant Margate's motion to dismiss is GRANTED as to Count VI and DENIED as to Counts II, III, IV, V and VII. The Plaintiff shall file within ten (10) days of the date of this Order an amended complaint alleging for purposes of Count VII that she was married to Delroy Vernon at the time of the Defendants' alleged acts of misconduct.

DONE AND ORDERED.